## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ARAM CORTINO,               :
                            :       Civil No. 1:11-CV-2142
    Plaintiff               :
                            :       (Judge Caldwell)
        v.                  :
                            :       (Magistrate Judge Carlson)
ROBERT KARNES, et al.,      :
                            :
    Defendants              :

## REPORT AND RECOMMENDATION

### I.    Statement of Facts and of the Case.

This is a *pro se* civil rights action brought by Aram Cortino, a prisoner formerly

housed in the Lebanon County Prison.  Cortino initially filed this action in the Court

of Common Pleas of Lebanon County on October 20, 2011. (Doc. 1)  In his initial *pro*

*se* complaint, Cortino named four supervisory officials at this county prison as

defendants: the warden, two deputy wardens, and a correctional captain. (Id.) Cortino

then lodged an array of claims against the defendants. (Id.)

For example, Cortino's complaint alleged in general terms that prison officials

had restricted his access to legal materials, complaining about prison postage policies

and limitations on access to the prison law library, and to copying services.  Cortino

made these assertions without identifying how these policies, problems or procedures

had adversely affected the litigation of any cases by this prisoner.  Cortino also

complained that he had not been placed on sick call on several occasions, but did not

disclose any medical condition requiring treatment beyond stating that his "nose runs constantly." (Id.) Furthermore, according to Cortino, prison medical staff violated the confidentiality provisions of HIPAA by discussing his medical concerns in the presence of corrections officers. (Id.) In addition, Cortino complained about the quality, quantity, timeliness and service of meals, protesting that the prison food was poor, unappetizing, served cold and presented to him in his cell where he was required to eat meals adjacent to the cell toilet. (Id.)

On the basis of these allegations, Cortino sought $5,000,000 in damages from each defendant. (Id.) However, for the most part, Cortino's complaint did not directly link the supervisory defendants to the conduct which was the subject of his complaint. Rather, Cortino typically only alleged that these supervisors failed to respond to his complaints about the conditions in the prison.

On November 15, 2011, the defendant removed this action to federal court. (Doc. 1) Three weeks later, the defendant moved to dismiss this complaint. (Doc. 5) We then directed the plaintiff to respond to this motion to dismiss by January 4, 2012. (Doc. 7) Cortino has failed to respond to this motion, the time for responding has now passed, and mail directed to Cortino has been returned undelivered, since Cortino has not provided the Court with a current, valid mailing address. (Docs. 4 and 8)

Therefore, in the absence of any timely response by Cortino, we will deem the motion to be ripe for resolution.

For the reasons set forth below, we recommend that the motion to dismiss be granted.

## II.   **Discussion**

### A.   **Under The Rules of This Court This Motion to Dismiss Should Be Deemed Unopposed and Granted**.

At the outset, under the Local Rules of this Court the plaintiff should be deemed to concur in this motion, since Cortino has failed to timely oppose the motion, or otherwise litigate this case. This procedural default completely frustrates and impedes efforts to resolve this matter in a timely and fair fashion, and under the rules of this Court warrants dismissal of the action, since Local Rule 7.6 of the Rules of this Court imposes an affirmative duty on the plaintiff to respond to motions and provides that:

> Any party opposing any motion, other than a motion for summary judgment, shall file a brief in opposition within fourteen (14) days after service of the movant's brief, or, if a brief in support of the motion is not required under these rules, within seven (7) days after service of the motion. *Any party who fails to comply with this rule shall be deemed not to oppose such motion*. Nothing in this rule shall be construed to limit the authority of the court to grant any motion before expiration of the prescribed period for filing a brief in opposition. A brief in opposition to a motion for summary judgment and LR 56.1 responsive statement, together with any transcripts, affidavits or other relevant documentation, shall be filed within twenty-one (21) days after service of the movant's brief.

Local Rule 7.6 (emphasis added).

It is now well-settled that "Local Rule 7.6 can be applied to grant a motion to dismiss without analysis of the complaint's sufficiency 'if a party fails to comply with the [R]ule after a specific direction to comply from the court.' <u>Stackhouse v. Mazurkiewicz</u>, 951 F.2d 29, 30 (1991)." <u>Williams v. Lebanon Farms Disposal, Inc.</u>, No. 09-1704, 2010 WL 3703808, *1 (M.D. Pa. Aug.26, 2010). In this case Cortino has not complied with the Local Rules, or this Court's order, by filing a timely response to this motion. Moreover, Cortino is no longer accepting communications at the last address which he had provided to the Court. As a *pro se* litigant Cortino's failure to maintain an address where he could be reached itself violated the rules of this Court; specifically, Local Rule 83.18, which provides that:

**LR 83.18 Appearance of Parties Not Represented by Counsel.**

Whenever a party by whom or on whose behalf an initial paper is offered for filing is not represented in the action, such party shall maintain on file with the clerk a current address at which all notices and copies of pleadings, motions or papers in the action may be served upon such party.

Therefore, these procedural defaults by Cortino compel the Court to consider:

[A] basic truth: we must remain mindful of the fact that "the Federal Rules are meant to be applied in such a way as to promote justice. *See* Fed.R.Civ.P. 1. Often that will mean that courts should strive to resolve cases on their merits whenever possible. However, justice also requires that the merits of a particular dispute be placed before the court in a timely fashion ...." <u>McCurdy v. American Bd. of Plastic Surgery</u>, 157

F.3d 191, 197 (3d Cir.1998).

<u>Lease v. Fishel</u>, 712 F. Supp. 2d 359, 371 (M.D.Pa. 2010).

With this basic truth in mind, we acknowledge a fundamental guiding tenet of our legal system. A failure on our part to enforce compliance with the rules, and impose the sanctions mandated by those rules when the rules are repeatedly breached, "would actually violate the dual mandate which guides this Court and motivates our system of justice: 'that courts should strive to resolve cases on their merits whenever possible [but that] justice also requires that the merits of a particular dispute be placed before the court in a timely fashion'." <u>Id.</u> Therefore, we are obliged to ensure that one party's refusal to comply with the rules does not lead to an unjustified prejudice to those parties who follow the rules.

These basic tenets of fairness apply here. In this case, the plaintiff has failed to comply with Local Rule 7.6 by filing a timely response to the motion to dismiss filed by the defendant, and has failed to comply with Local Rule 83.18 by providing us with a means of contacting and communicating with him. These failures now compel us to apply the sanction called for under Rule 7.6 and deem the plaintiff to not oppose this motion to dismiss.

## B.    Dismissal of this Case Is Also Warranted Under Rule 41.

Beyond the requirements imposed by the Local Rules of this Court, Rule 41(b) of the Federal Rules of Civil Procedure authorizes a court to dismiss a civil action for failure to prosecute, stating that: "If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." Fed. R. Civ. P. 41(b).  Decisions regarding dismissal of actions for failure to prosecute rest in the sound discretion of the court, and will not be disturbed absent an abuse of that discretion. Emerson v. Thiel College, 296 F.3d 184, 190 (3d Cir. 2002)(citations omitted).  That discretion, however, while broad is governed by certain factors, commonly referred to as Poulis factors.  As the United States Court of Appeals for the Third Circuit has noted:

> To determine whether the District Court abused its discretion [in dismissing a case for failure to prosecute], we evaluate its balancing of the following factors: (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense. Poulis v. State Farm Fire and Cas. Co., 747 F.2d 863, 868 (3d Cir.1984).

Emerson, 296 F.3d at 190.

In exercising this discretion "there is no 'magic formula' that we apply to determine whether a District Court has abused its discretion in dismissing for failure to prosecute." Lopez v. Cousins, No. 10-1877, 2011 WL 2489897, *3 (3d Cir. June 23, 2011)(quoting Briscoe v. Klem, 538 F.3d 252 (3d Cir. 2008))  Therefore, "[i]n balancing the Poulis factors, [courts] do not [employ] a . . . 'mechanical calculation' to determine whether a District Court abused its discretion in dismissing a plaintiff's case. Mindek v. Rigatti, 964 F.2d 1369, 1373 (3d Cir.1992)." Briscoe v. Klaus, 538 F.3d at 263.  Consistent with this view, it is well-settled that " 'no single Poulis factor is dispositive,' Ware, 322 F.3d at 222, [and it is] clear that 'not all of the Poulis factors need be satisfied in order to dismiss a complaint.' Mindek, 964 F.2d at 1373." Briscoe v. Klaus, 538 F.3d at 263.  However, recognizing the broad discretion conferred upon the district court in making judgments weighing these six factors, the court of appeals has frequently sustained such dismissal orders where there has been a pattern of dilatory conduct by a *pro se* litigant who is not amenable to any lesser sanction. See, e.g., Emerson v. Thiel College, supra; Tillio v. Mendelsohn, 256 F. App'x 509 (3d Cir. 2007); Reshard v. Lankenau Hospital, 256 F. App'x 506  (3d Cir. 2007); Azubuko v. Bell National Organization, 243 F. App'x 728 (3d Cir. 2007).

In this case, a dispassionate assessment of the Poulis factors weighs heavily in favor of dismissing this action.  At the outset, a consideration of the first Poulis factor,

the extent of the party's personal responsibility, shows that the delays in this case are entirely attributable to the plaintiff, who has failed to abide by court orders, provide the Court with a means to contact this party, and has neglected to litigate this case.

Similarly, the second Poulis factor– the prejudice to the adversary caused by the failure to abide by court orders–also calls for dismissal of this action.   Indeed, this factor–the prejudice suffered by the party seeking sanctions–is entitled to great weight and careful consideration.   As the United States Court of Appeals for the Third Circuit has observed:

> "Evidence of prejudice to an adversary would bear substantial weight in support of a dismissal or default judgment." Adams v. Trustees of N.J. Brewery Employees' Pension Trust Fund, 29 F.3d 863, 873-74 (3d Cir.1994) (internal quotation marks and citation omitted). Generally, prejudice includes "the irretrievable loss of evidence, the inevitable dimming of witnesses' memories, or the excessive and possibly irremediable burdens or costs imposed on the opposing party." Id. at 874 (internal quotation marks and citations omitted). . . . However, prejudice is not limited to "irremediable" or "irreparable" harm. Id.; see also Ware v. Rodale Press, Inc., 322 F.3d 218, 222 (3d Cir.2003); Curtis T. Bedwell & Sons, Inc. v. Int'l Fidelity Ins. Co., 843 F.2d 683, 693-94 (3d Cir.1988). It also includes "the burden imposed by impeding a party's ability to prepare effectively a full and complete trial strategy." Ware, 322 F.3d at 222. Oftentimes, this type of prejudice involves disputes between the parties on discovery matters because the defendants were deprived of necessary information or had to expend costs to obtain court orders for compliance. See, e.g., Poulis, 747 F.2d at 868 (finding that the defendants were prejudiced where the plaintiffs did not answer interrogatories,the defendants had to file a motion to compel the plaintiffs' answers, and the defendant had "to file its pre-trial statement without the opportunity to review plaintiffs' pretrial statement which was due to be filed first"); Ware, 322 F.3d at 220-23 (affirming the District

Court's conclusion that a defendant had been prejudiced where the plaintiff repeatedly ignored the defendant's discovery request for the plaintiff's computation of damages and did not provide it until one week prior to trial).

Briscoe  v. Klaus, 538 F.3d at 259-60.

In this case the plaintiff's failure to litigate this claim, remain in contact with the Court or comply with court orders now wholly frustrates and delays the resolution of this action.  In such instances, the defendants are plainly prejudiced by the plaintiff's continuing inaction and dismissal of the case clearly rests in the discretion of the trial judge. Tillio v. Mendelsohn, 256 F. App'x 509 (3d Cir. 2007) (failure to timely serve pleadings compels dismissal); Reshard v. Lankenau Hospital, 256 F. App'x 506  (3d Cir. 2007) (failure to comply with discovery compels dismissal); Azubuko v. Bell National Organization, 243 F. App'x 728 (3d Cir. 2007) (failure to file amended complaint prejudices defense and compels dismissal).

When one considers the third Poulis factor-the history of dilatoriness on the plaintiff's part–it becomes clear that dismissal of this action is now appropriate.  In this regard, while it is evident that "'[e]xtensive or repeated delay or delinquency constitutes a history of dilatoriness, such as consistent non-response to interrogatories, or consistent tardiness in complying with court orders.' Adams, 29 F.3d at 874; [it is also clear that] conduct that occurs one or two times is insufficient to demonstrate a

'history of dilatoriness.'" <u>Briscoe v. Klaus,</u> 538 F.3d at 260-61 (some citations omitted). Here, over the span of several months, the plaintiff has failed to timely file pleadings, provide the Court with any means of communicating with this party and has not complied with orders of the Court. Thus, Cortino's conduct displays "[e]xtensive or repeated delay or delinquency [and conduct which] constitutes a history of dilatoriness, such as consistent non-response to [discovery], or consistent tardiness in complying with court orders." <u>Adams,</u> 29 F.3d at 874.

The fourth <u>Poulis</u> factor–whether the conduct of the party or the attorney was willful or in bad faith–also cuts against the plaintiff. In this setting we must assess whether this conduct reflects mere inadvertence or willful conduct, in that it involved "strategic," "intentional or self-serving behavior," and not mere negligence. <u>Adams v. Trs. of N.J. Brewery Emps.' Pension Trust Fund</u>, 29 F.3d 863, 875 (3d Cir.1994). At this juncture, when the plaintiff has failed to comply with instructions of the Court directing the plaintiff to take specific actions in this case, has provided us with no means to communicate with him, and has violated the Local Rules, the Court is compelled to conclude that the plaintiff's actions are not accidental or inadvertent but instead reflect an intentional disregard for this case and the Court's instructions.

While <u>Poulis</u> also enjoins us to consider a fifth factor, the effectiveness of sanctions other than dismissal, cases construing <u>Poulis</u> agree that in a situation such as this case, where we are confronted by a *pro se* litigant who will not comply with the

rules or court orders, lesser sanctions may not be an effective alternative. See, e.g., Briscoe v. Klaus, 538 F.3d 252, 262-63 (3d Cir. 2008); Emerson, 296 F.3d at 191. This case presents such a situation where the plaintiff's status as a *pro se* litigant severely limits the ability of the Court to utilize other lesser sanctions to ensure that this litigation progresses in an orderly fashion. In any event, by entering our prior orders, and counseling the plaintiff on his obligations in this case, we have endeavored to use lesser sanctions, but to no avail, since we now have no means of communicating with Cortino. The plaintiff still declines to obey court orders, and otherwise ignores his responsibilities as a litigant. Since lesser sanctions have been tried, and have failed, only the sanction of dismissal remains available to the Court.

Finally, under Poulis we are cautioned to consider one other factor, the meritoriousness of the plaintiff's claims. In our view, however, consideration of this factor cannot save this particular plaintiff's claims, since Cortino is now wholly non-compliant with his obligations as a litigant. The plaintiff cannot refuse to cooperate with this discovery, which would address the merits of his claims, and then assert the untested merits of these claims as grounds for denying a motion to sanction him for this refusal to participate in discovery. In any event, it is well-settled that " 'no single Poulis factor is dispositive,' Ware, 322 F.3d at 222, [and it is] clear that 'not all of the Poulis factors need be satisfied in order to dismiss a complaint.' Mindek, 964 F.2d at

1373." <u>Briscoe v. Klaus</u>, 538 F.3d at 263.  Therefore, the untested merits of the non-compliant plaintiff's claims, standing alone, cannot defeat this sanctions motion.

In any event, as discussed below, many of Cortino's claims fail on their merits, yet another factor which favors dismissal of this action.  The legal flaws inherent in many of these claims are discussed separately below.

### C.  Many of Cortino's Claims Fail On Their Merits

The defendant has filed a motion to dismiss this complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In addition, when reviewing *in forma pauperis* complaints, 28 U.S.C. § 1915(e)(2)(B)(ii) specifically enjoins us to "dismiss the complaint at any time if the court determines that . . . the action . . . fails to state a claim upon which relief may be granted."

With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in <u>Bell Atlantic Corp. v. Twombly,</u> 550 U.S. 544 (2007) continuing with our opinion in <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 230 (3d Cir. 2008) and culminating recently with the Supreme Court's decision in

Ashcroft v. Iqbal –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

Fowler v. UPMC Shadyside, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn from the complaint are to be construed in the light most favorable to the plaintiff. Jordan v. Fox Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged." Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id. In keeping with the principles of Twombly, the

Supreme Court has underscored that a trial court must assess whether a complaint

states facts upon which relief can be granted when ruling on a motion to dismiss.  In

Ashcroft v. Iqbal, __U.S. __, 129 S.Ct. 1937 (2009), the Supreme Court held that,

when considering a motion to dismiss, a court should "begin by identifying pleadings

that, because they are no more than conclusions, are not entitled to the assumption of

truth."  Id. at 1950.  According to the Supreme Court, "[t]hreadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not

suffice."  Id. at 1949.  Rather, in conducting a review of the adequacy of complaint,

the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than
> conclusions are not entitled to the assumption of truth. While legal
> conclusions can provide the framework of a complaint, they must be
> supported by factual allegations.  When there are well-pleaded factual
> allegations, a court should assume their veracity and then determine
> whether they plausibly give rise to an entitlement to relief.

Id. at 1950.

Thus, following Twombly and Iqbal a well-pleaded complaint must contain more than

mere legal labels and conclusions.  Rather, a complaint must recite factual allegations

sufficient to raise the plaintiff's claimed right to relief beyond the level of mere

speculation.  As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state
> a claim, district courts should conduct a two-part analysis. First, the

factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

In addition to these pleading rules, a civil complaint must comply with the requirements of Rule 8(a) of the Federal Rule of Civil Procedure which defines what a complaint should say and provides that:

(a) A pleading that states a claim for relief must contain (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Thus, a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a *pro se* plaintiff's complaint must recite factual allegations which are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action. Judged against these standards, we find that many of Cortino's claims fail as a matter of law:

1.    **Cortino Cannot Convert His Dissatisfaction with The Handling of Grievance Appeals Into Federal Civil Rights Violations**

At the outset, the gravamen of many of Cortino's allegations is his dissatisfaction with the responses he received from the supervisory defendants with respect to various grievances which he lodged.  This claim, which lies at the heart of Cortino's complaint, fails for several reasons.  First, it is clear that inmates cannot sustain constitutional claims against prison officials based solely upon assertions that those officials failed to adequately investigate their past grievances.  Inmates do not have a constitutional right to a prison grievance system. See Jones v. North Carolina Prisoners' Union, 433 U.S. 119, 137-38 (1977); Speight v. Sims, No. 08-2038, 283 F. App'x 880, 2008 WL 2600723 at *1 (3d Cir. June 30, 2008) (citing Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) ("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner.").  Consequently, dissatisfaction with response to an inmate's grievances does not support a constitutional claim. See also Alexander v. Gennarini, 144 F. App'x. 924 (3d Cir. 2005) (involvement in post-incident grievance process not a basis for § 1983 liability); Pryor-El v. Kelly, 892 F. Supp. 261, 275 (D. D.C. 1995) (because prison grievance procedure does not confer any substantive constitutional rights upon prison inmates, the prison officials' failure to comply with grievance procedure is not actionable). See also Cole v. Sobina, No.

04-99J, 2007 WL 4460617, at *5 (W.D. Pa. Dec. 19, 2007) ("[M]ere concurrence in a prison administrative appeal process does not implicate a constitutional concern."). As the United States Court of Appeals for the Third Circuit recently observed when disposing of a similar claim by another inmate:

> Several named defendants, such as the Secretaries of the Department of Corrections or Superintendents, were named only for their supervisory roles in the prison system. The District Court properly dismissed these defendants and any additional defendants who were sued based on their failure to take corrective action when grievances or investigations were referred to them. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988) (defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior* ); see also Antonelli v. Sheahan, 81 F.3d 1422, 1430 (7th Cir.1996) (state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause)
>
> Pressley v. Beard, 266 F.App'x 216, 218 (3d Cir. 2008).

In sum, it is clearly established that inmates have no constitutional right to a grievance procedure in prison. See, e.g., Rivera v. Dep't of Corrections, 3466 F. App'x 749 (3d Cir. 2009); Smith v. Lycoming County, 335 F.App'x 147 (3d Cir. 2009); Bartelli v. Galabanski, 225 F. App'x 194 (3d Cir. 2007). Therefore, the existence of a grievance procedure does not confer any substantive constitutional rights on inmates like Cortino, Bartelli v. Jones, 231 F.App'x 129 (3d Cir. 2007), and Cortino's otherwise unadorned complaints about the handling of these grievances fail as a matter of law.

### 2.   Cortino Has Not Stated a Colorable Right-of-Access to the Courts Claim

Cortino then asserts that the defendants have violated the plaintiff's right of access to the courts through their law library, mail handling and document copying policies. This claim calls upon us to also examine the contours of the constitutional right of access to the courts. Since 1977, the United States Supreme Court has recognized that inmates have a constitutional right of access to the courts. Bounds v. Smith, 430 U.S. 817 (1977). As the Supreme Court initially observed, this right of access to the courts is satisfied when corrections officials facilitate "meaningful" access for those incarcerated, either through legal materials or the assistance of those trained in the law. Id. at 827 ("[T]he fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law.")

Two decades later, in 1996, the Supreme Court provided further definition and guidance regarding the scope and nature of this right of access to the courts in Lewis v. Carey, 518 U.S. 343 (1996). In Lewis, the court eschewed efforts to define this right in abstract, or theoretical terms, but rather cautioned courts to focus on concrete outcomes when assessing such claims. As the court observed:

Because Bounds did not create an abstract, freestanding right to a law library or legal assistance, an inmate cannot establish relevant actual injury simply by establishing that his prison's . . . legal assistance program is subpar in some theoretical sense. . . . Insofar as the right vindicated by Bounds is concerned, "meaningful access to the courts is the touchstone," id., at 823, 97 S.Ct., at 1495 (internal quotation marks omitted), and the inmate therefore must go one step further and demonstrate that the alleged shortcomings in the . . . legal assistance program hindered his efforts to pursue a legal claim. . . . . Although Bounds itself made no mention of an actual-injury requirement, it can hardly be thought to have eliminated that constitutional prerequisite. And actual injury is apparent on the face of almost all the opinions in the 35-year line of access-to-courts cases on which Bounds relied, see id., at 821-825, 97 S.Ct., at 1494-1497. Moreover, the assumption of an actual-injury requirement seems to us implicit in the opinion's statement that "we encourage local experimentation" in various methods of assuring access to the courts. Id., at 832, 97 S.Ct., at 1500.

Lewis v. Casey, 518 U.S. 343, 351-52 (1996).

Thus, following Lewis courts have consistently recognized several guiding principles which animate access-to-court claims by prisoners.  First, such claims require some proof of an actual, concrete injury, in the form of direct prejudice to the plaintiff in the pursuit of some legal claim. See, e.g., Oliver v. Fauver, 118 F.3d 175 (3d Cir. 1997); Demeter v. Buskirk, No. 03-1005, 2003 WL 22139780 (E.D. Pa. Aug. 27, 2003); Castro v. Chesney, No. 97-4983, 1998 WL 150961 (E.D. Pa. March 31, 1998).  Moreover, consistent with the Supreme Court's express view that "'we encourage local experimentation' in various methods of assuring access to the courts," Lewis v. Casey, 518 U.S. at 352, courts have long recognized that public officials can

provide meaningful access to the courts through a wide variety of means. See, e.g.,

Tinsley v. Del Rosso, No. 08-1251, 2008 WL 2236598 (D.N.J. May 30, 2008);

Tormasi v. Hayman, No. 07-5683, 2008 WL 1995125 (D.N.J. May 6, 2008); Annis v.

Fayette County Jail, No. 07-1628, 2008 WL 763735 (W.D. Pa. March 20, 2008);

Hunter v. Shoupe, No. 06-1023, 2007 WL 120030 (W.D. Pa. Jan. 10, 2007); Cook v.

Boyd, 881 F.Supp. 171, 176 (E.D.Pa.1995); United States ex rel. Russell v. Hendrick,

376 F.Supp. 158 (E.D.Pa. 1974).

Finally, courts have held that to sustain such a claim a prisoner must also allege

causation; that is, the prisoner must show a causal connection between the action of

prison officials and the prejudice experienced by the inmate in some pending

litigation. Thus, "actual injury, [is] a requirement of a claim asserting a violation of

the right of court access." Mitchell v. Wydra, 377 F. App'x 143, 145 (3d Cir. 2010);

see Butler v. Meyers, 241 F. App'x 818 (3d Cir. 2007)(denying inmate claim where

causation not shown).  As the appellate court has observed in this setting: "Prisoners

have a fundamental right to access the courts. Lewis v. Casey, 518 U.S. 343,

346(1996). However, a prisoner making an access-to-courts claim is required to show

that the denial of access *caused* actual injury. Id. at 352-54. Actual injury occurs when

a prisoner demonstrates that a 'nonfrivolous' and 'arguable' claim was lost because

of the denial of access to the courts. Christopher v. Harbury, 536 U.S. 403,

415(2002)."   Tinsley v. Giorla, 369 F. App'x 378, 381 (3d Cir. 2010)(emphasis added).

Here, Cortino has not alleged, or shown, any demonstrable prejudice to him in the litigation of a particular case by showing that a nonfrivolous and arguable claim was lost.  Since, "actual injury, [is] a requirement of a claim asserting a violation of the right of court access," Mitchell v. Wydra, 377 F. App'x 143, 145 (3d Cir. 2010); see Butler v. Meyers, 241 F. App'x 818 (3d Cir. 2007)(denying inmate claim where causation not shown), this failure of proof is fatal here and compels dismissal of this claim as well.

> **3.   Cortino Has Failed to Allege Personal Involvement By The Supervisory Defendants in Some of the Acts Alleged in the Complaint**

Furthermore, with respect to a number of claims set forth in his complaint, Cortino has not alleged any personal involvement by the named defendants in the conduct which is described in this complaint.  This, too, is a fatal flaw since  it is also clear that a claim of a constitutional deprivation cannot be premised merely on the fact that a named defendant was an agency supervisor when the incidents set forth in the complaint occurred.  Quite the contrary, to state a constitutional tort claim the plaintiff must show that the supervisory defendants actively deprived him of a right secured by the Constitution.  Morse v. Lower Merion School Dist., 132 F.3d 902 (3d Cir. 1997);

see also Maine v.Thiboutot, 448 U.S. 1 (1980).  Constitutional tort liability is personal

in nature and can only follow personal involvement in the alleged wrongful conduct

shown through specific allegations of personal direction or of actual knowledge and

acquiescence in the challenged practice.  Robinson v. City of Pittsburgh, 120 F.3d

1286 (3d Cir. 1997).

In particular, with respect to prison supervisors it is well-established that:

> "A[n individual government] defendant in a civil rights action must have
> personal involvement in the alleged wrongdoing; liability cannot be
> predicated solely on the operation of *respondeat superior*. Personal
> involvement can be shown through allegations of personal direction or
> of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d
> 1195, 1207 (3d Cir.1988).

Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005).

As the Supreme Court has observed:

> Government officials may not be held liable for the unconstitutional
> conduct of their subordinates under a theory of *respondeat superior*. . .
> .  See Monell v. New York City Dept. of Social Servs., 436 U.S. 658,
> 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (finding no vicarious liability
> for a municipal "person" under 42 U.S.C. § 1983); see also Dunlop v.
> Munroe, 7 Cranch 242, 269, 3 L.Ed. 329 (1812) (a federal official's
> liability "will only result from his own neglect in not properly
> superintending the discharge" of his subordinates' duties); Robertson v.
> Sichel, 127 U.S. 507, 515-516, 8 S.Ct. 1286, 3 L.Ed. 203 (1888) ("A
> public officer or agent is not responsible for the misfeasances or position
> wrongs, or for the nonfeasances, or negligences, or omissions of duty, of
> the subagents or servants or other persons properly employed by or under
> him, in the discharge of his official duties"). Because vicarious liability
> is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that

> each Government-official defendant, through the official's own individual actions, has violated the Constitution.

Ashcroft v. Iqbal, 129 S.Ct. 1937, 1948 (2009).

Applying these benchmarks, courts have frequently held that, in the absence of evidence of supervisory knowledge and approval of subordinates' actions, a plaintiff may not maintain an action against supervisors based upon the alleged misdeeds of their subordinates. O'Connell v. Sobina, No. 06-238, 2008 WL 144199, * 21 (W.D. Pa. Jan. 11, 2008); Neuburger v. Thompson, 305 F. Supp. 2d 521, 535 (W. D. Pa. 2004). Rather, "[p]ersonal involvement must be alleged and is only present where the supervisor directed the actions of supervisees or actually knew of the actions and acquiesced in them. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988)." Jetter v. Beard, 183 F.Appx. 178, 181 (3d Cir. 2006). Since Cortino has not alleged supervisory knowledge and approval of these actions, he cannot sustain these claims against these supervisory defendants and his claims should be dismissed. Hudson v. City of McKeesport, 241 F. App'x 519 (3d Cir. 2007)(affirming dismissal of defendant who was only named in caption of case.)

### 5.   Cortino's Eighth Amendment Prison Diet and Medical Care Complaints Are Unavailing

In other instances, the gist of Cortino's complaint seems to be that he was offered food which was cold, unappetizing or poorly presented. Such claims simply do not state an infraction of constitutional dimension. Liberally construed, the

gravamen of the aspect of the plaintiff's complaint is that prison officials violated Cortino's rights under the Eighth Amendment to the United States Constitution by displaying "deliberate indifference" to this inmate's dietary needs when they fed him unappetizing meals, or occasionally failed to deliver meals in a timely fashion. Cortino faces an exacting burden in advancing these Eighth Amendment claims against prison officials in their individual capacities.  To sustain such claims, he must plead facts which:

> [M]eet two requirements: (1) "the deprivation alleged must be, objectively, sufficiently serious;" and (2) the "prison official must have a sufficiently culpable state of mind." Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (quotation marks and citations omitted). In prison conditions cases, "that state of mind is one of 'deliberate indifference' to inmate health or safety." Id. "Deliberate indifference" is a subjective standard under Farmer-the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety.

Beers-Capitol v. Whetzel,256 F.3d 120, 125 (3d Cir. 2001).

By including a subjective intent component in this Eighth Amendment benchmark, the courts have held that a mere generalized knowledge that prisons are dangerous uncomfortable or unpleasant places does not give rise to an Eighth Amendment claim. See Jones v. Beard, 145 F. App'x 743 (3d Cir. 2005)(finding no Eighth Amendment violation where inmate-plaintiff complained about cellmate who had a history of psychological problems, but where plaintiff failed to articulate a specific threat of harm during the weeks prior to an attack.)  In short, when "analyzing deliberate

indifference, a court must determine whether the prison official 'acted or failed to act despite his knowledge of a substantial risk of serious harm.' <u>Farmer v. Brennan</u>, 511 U.S. 825, 841 (1994).  A prisoner plaintiff must prove that the prison official 'knows of and disregards an excessive risk to inmate health or safety.' <u>Id</u> . at 837." <u>Garvey v. Martinez</u>, 08-2217, 2010 WL 569852, at *6 (M.D.Pa. Feb. 11, 2010).

These principles apply with particular force to conditions of confinement claims like those apparently advanced by Cortino.  In this setting, it is clear that:

> The Eighth Amendment prohibits punishments inconsistent with "evolving standards of decency that mark the progress of a maturing society." <u>Estelle v. Gamble</u>, 429 U.S. 97, 102, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (quoting <u>Trop v. Dulles</u>, 356 U.S. 86, 101, 78 S.Ct. 590, 2 L.Ed.2d 630 (1958)). Conditions of prison confinement violate the Eighth Amendment only if they "deprive inmates of the minimal civilized measure of life's necessities." <u>Rhodes v. Chapman</u>, 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981)

<u>Atkinson v. Taylor</u>, 316 F.3d 257, 272 (3d Cir. 2003).

As for Cortino's conditions-of-confinement claim relating to the appearance and appeal of his prison food, courts frequently rebuff inmate complaints like those made here relating to the packaging and presentation of meals.  Thus, "while prisoners are guaranteed a nutritionally adequate diet under the Eighth Amendment, <u>see</u> <u>Ramos v. Lamm</u>, 639 F.2d 559, 571 (10th Cir.1980), there is no constitutional right to hot meals. <u>See</u> <u>Brown-El v. Delo</u>, 969 F.2d 644, 648 (8th Cir.1992) (finding frivolous prisoner's claim that his constitutional rights were violated when he was served cold food)."

Laufgas v. Speziale, 263 F.App'x. 192, 198 (3d Cir. 2008).  Similarly, the "purported deprivation of a single meal is not of such magnitude as to rise to the level of a constitutional violation. See Robles v. Coughlin, 725 F.2d 12, 15 (2d Cir.1983) (only a substantial deprivation of food to a prisoner sets forth a viable Eighth Amendment claim)." Lindsey v. O'Connor, 327 F. App'x. 319, 321 (3d Cir. 2009).  Nor does the presentation of food in an unappetizing fashion, by itself, violate the Eighth Amendment.  Quite the contrary, with respect to this prison diets it is well-settled that:" [U]nappetizing food served in prison is not constitutionally actionable. Maldonado v. McFaden, No. 94–1477, 1994 U.S. Dist. LEXIS 16837, at *11 (E.D.Pa. Nov. 23, 1994) ('[T]he Eighth Amendment requires only that inmates be provided food that is adequate to maintain health, and served in a sanitary manner.')." Jones v. Beard, No. 10-5544, 2011 WL 3611470, *8 (E.D.Pa. August 16, 2011).  Therefore, Cortino's complaints regarding the appeal and presentation of his meals simply do not rise to the level of a constitutional infraction.

Similarly, Cortino also appears to allege that prison officials violated his rights under the Eighth Amendment to the United States Constitution by displaying "deliberate indifference" to his medical needs, when they failed to schedule sick call for a running nose which he experienced.  The plaintiff faces an exacting burden in advancing this Eighth Amendment claim against prison officials in their individual capacities.  To sustain such a claim, he must:

> [M]eet two requirements: (1) "the deprivation alleged must be, objectively, sufficiently serious;" and (2) the "prison official must have a sufficiently culpable state of mind." <u>Farmer v. Brennan</u>, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (quotation marks and citations omitted). In prison conditions cases, "that state of mind is one of 'deliberate indifference' to inmate health or safety." <u>Id.</u> "Deliberate indifference" is a subjective standard under <u>Farmer</u>-the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety.

<u>Beers-Capitol v. Whetzel,</u>256 F.3d 120, 125 (3d Cir. 2001).

These principles apply with particular force to Eighth Amendment claims premised upon inadequate medical care.  In the medical context, a constitutional violation under the Eighth Amendment occurs only when state officials are deliberately indifferent to an inmate's serious medical needs. <u>Estelle v. Gamble</u>, 429 U.S. 97, 105 (1976).  To establish a violation of his constitutional right to adequate medical care in a prison setting, the plaintiff is required to point to evidence that demonstrates both (1) a serious medical need, and (2) acts or omissions by prison officials that indicate deliberate indifference to that need.  <u>Rouse v. Plantier</u>, 182 F.3d 192, 197 (3d Cir. 1999).

Deliberate indifference to a serious medical need involves the "unnecessary and wanton infliction of pain." <u>Estelle</u>, 429 U.S. at 104.  Such indifference may be evidenced by an intentional refusal to provide care, delayed provision of medical treatment for non-medical reasons, denial of prescribed medical treatment, denial of

reasonable requests for treatment that results in suffering or risk of injury, <u>Durmer v. O'Carroll</u>, 991 F.2d 64, 68 (3d Cir. 1993), or by "persistent conduct in the face of resultant pain and risk of permanent injury," <u>White v. Napoleon</u>, 897 F.2d 103, 109 (3d Cir. 1990).

However, it is also clear that the mere misdiagnosis of a condition or medical need, or negligent treatment provided for a condition, is not actionable as an Eighth Amendment claim because medical malpractice is not a constitutional violation. <u>Estelle</u>, 429 U.S. at 106. "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." <u>Durmer</u>, 991 F.2d at 67 (citations omitted). Furthermore, in a prison medical context, deliberate indifference is generally not found when some significant level of medical care has been offered to the inmate. <u>Clark v. Doe</u>, 2000 U.S. Dist. LEXIS 14999, 2000 WL 1522855, at *2 (E.D.Pa. Oct. 13, 2000)("courts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care").  Thus, such complaints fail as constitutional claims under § 1983 since "the exercise by a doctor of his professional judgment is never deliberate indifference. <u>See e.g.</u> <u>Brown v. Borough of Chambersburg</u>, 903 F.2d 274, 278 (3d Cir.1990) ('[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights.')". <u>Gindraw v. Dendler</u>, 967 F.Supp. 833, 836 (E.D. Pa. 1997).  Applying this exacting standard, courts have frequently rejected Eighth Amendment claims that are

based upon the level of professional care that an inmate received; see, e.g., Ham v. Greer, 269 F. App'x 149 (3d Cir. 2008); James v. Dep't of Corrections, 230 F. App'x 195 (3d Cir. 2007); Gillespie v. Hogan, 182 F. App'x 103 (3d Cir. 2006); Bronson v. White, No. 05-2150, 2007 WL 3033865 (M.D. Pa. Oct. 15, 2007); Gindraw v. Dendler, 967 F.Supp. 833 (E.D. Pa. 1997), particularly where it can be shown that significant medical services were provided to the inmate but the prisoner is dissatisfied with the outcome of these services.  In short, in the context of the Eighth Amendment, any attempt to second-guess the propriety or adequacy of a particular course of treatment is disavowed by courts since such determinations remain a question of sound professional medical judgment. Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (quoting Bowring v. Godwin, 551 F.2d 44, 48 (4th Cir. 1977)).

Furthermore, it is well-settled that an inmate's dissatisfaction with a course of medical treatment, standing alone, does not give rise to a viable Eighth Amendment claim. See Taylor v. Norris, 36 Fed. Appx. 228, 229 (8th Cir.2002) (deliberate indifference claim failed when it boiled down to a disagreement over recommended treatment for hernias and decision not to schedule a doctor's appointment); Abdul-Wadood v. Nathan, 91 F.3d 1023, 1024-35 (7th Cir.1996) (inmate's disagreement with selection of medicine and therapy for sickle cell anemia falls well short of demonstrating deliberate indifference).  Therefore, where a dispute in essence entails

no more than a disagreement between an inmate and doctors over alternate treatment plans, the inmate's complaint will fail as constitutional claims under § 1983 since "the exercise by a doctor of his professional judgment is never deliberate indifference." Gindraw v. Dendler, 967 F.Supp. 833, 836 (E.D. Pa. 1997)(citations omitted).

In this case, to the extent that Cortino endeavors to advance an Eighth Amendment claim, he has not alleged what his medical needs were, beyond asserting that his nose was running, and he has not described the conduct which he alleges constituted deliberate indifference to those needs, beyond stating that he was not placed on sick call at some time in the past.  Furthermore, he has not responded in any fashion to the motion to dismiss this claim, leaving us without any further context or content to these claims.  In short, given Cortino's current abandonment of this claim, and his earlier failure to fully articulate this claim, to the extent that Cortino seeks to equate a running nose with cruel and unusual punishment, this claim fails.

Cortino's complaints regarding his medical care are also flawed in yet another way.  In his complaint Cortino advances a novel claim to a private right of action under the Health Insurance Portability and Accountability Act (HIPAA).  Health Insurance Portability and Accountability Act of 1996, 42 U.S.C. §201, note. Observing that the Act protects the privacy of patient information, Cortino alleges that when he engaged in conversations with his health care providers, they violated the

statute by disclosing health information in the presence of correctional officers. This novel claim warrants only brief consideration. The courts that have examined HIPAA have generally concluded "that HIPAA does not create such a private right [of action for individual plaintiffs]. See Rigaud v. Garofalo, 2005 WL 1030196 (E.D.Pa.); Dominic J. v. Wyoming Valley West High School, 362 F.Supp.2d 560 (M.D.Pa.2005); O'Donnell v. Blue Cross Blue Shield of Wyoming, 173 F.Supp.2d 1176 (D.C.Wyo.2001); Brock v. Provident Am. Ins. Co., 144 F.Supp.2d 652 (N.D.Tex.2001); Means v. Indep. Life and Accident Insurance Co., 963 F.Supp. 1131 (M.D.Ala.1997); Wright v. Combined Insurance Co. of America, 959 F.Supp. 356 (N.D.Miss.1997)." Carney v. Snyder, No. 06-23, 2006 WL 2372007, *4 (W.D.Pa Aug. 15, 2006). Therefore, Cortino simply may not maintain a private HIPAA claim against these defendants arising out of his verbal exchanges with prison medical staff.

Thus, an analysis of this final Poulis factor– the meritoriousness of the plaintiff's claims–reveals that many of Cortino's assertions in this complaint fail to allege a colorable constitutional claim. Therefore, in this case all of the Poulis factors call for dismissal of this case.

Having concluded that this *pro se* complaint is flawed in multiple and profound ways, we recognize that in civil rights cases *pro se* plaintiffs often should be afforded an opportunity to amend a complaint before the complaint is dismissed in its entirety,

see Fletcher-Hardee Corp. v. Pote  Concrete Contractors, 482 F.3d 247, 253 (3d Cir.

2007), unless it is clear that granting further leave to amend would be futile, or result

in undue delay. Alston v. Parker, 363 F.3d  229, 235 (3d Cir. 2004).  In this case, the

current complaint fails to state a viable civil rights cause of action, the factual and

legal grounds proffered in support of this complaint make it clear that he has no right

to relief, and we have no means of communicating with Cortino, whose whereabouts

are unknown.  On these facts, we conclude that granting further leave to amend would

be futile or result in undue delay. Id.  Therefore, it is recommended that the complaint

be dismissed without further leave to amend.

### III.   Recommendation

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the

defendant's motion to dismiss (Doc. 5), be GRANTED and the plaintiff's complaint

be dismissed.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings,
> recommendations or report addressing a motion or matter described in 28
> U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition
> of a prisoner case or a habeas corpus petition within fourteen  (14) days
> after being served with a copy thereof. Such party shall file with the clerk
> of court, and serve on the magistrate judge and all parties, written
> objections which shall specifically identify the portions of the proposed
> findings, recommendations or report to which objection is made and the
> basis for such objections. The briefing requirements set forth in Local
> Rule 72.2 shall apply. A judge shall make a de novo determination of

those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 25th day of January 2012.

**_S/Martin C. Carlson_**
Martin C. Carlson
United States Magistrate Judge